UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE.
at CHATTANOOGA

| | |
|---|---|
| KIMBERLY LYNN SCHUMAN, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 1:15-CV-299-SKL |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM AND ORDER

Plaintiff Kimberly Lynn Schuman ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for summary judgment [Docs. 16 & 18] with supporting briefs [Docs. 17, 19 & 20]. For the reasons stated below, (1) Plaintiff's motion for summary judgment [Doc. 16] will be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 18] will be **DENIED**; and (3) the Commissioner's decision denying benefits will be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

I.   ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for a period of disability and DIB on May 24, 2012, alleging disability beginning May 18, 2012 (Transcript [Doc. 11] ("Tr.") 12, 40, 180-81). Plaintiff's claim was denied initially and upon reconsideration at the agency level (Tr. 114-17, 119-21). After a video hearing held March 11, 2014 (Tr. 33-78), the administrative law judge ("ALJ") found on May 8, 2014, that Plaintiff was not under a disability as defined in the Social

Security Act ("Act"), because she retained the residual functional capacity ("RFC") to perform work that existed in significant numbers in the national economy (Tr. 12-27). On September 14, 2015, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), making the ALJ's May 8, 2014 decision the final decision of the Commissioner. Plaintiff timely filed this action [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born in 1982, was 29 on her alleged disability date, which is defined as a younger individual, and was 31 on the date of her hearing (Tr. 25, 38). Plaintiff completed high school, and is able to communicate in English (Tr. 25, 40). Plaintiff's past work history includes work as a fast food server, cashier, and hair stylist (Tr. 42-45, 69-70).

### B. Medical Records

Plaintiff's extensive medical records reflect both physical and mental health issues. Although not all of the records will be specifically mentioned herein, pertinent portions of the record have been reviewed and will be addressed as necessary in the respective sections of this order.

### C. Hearing Testimony

At the hearing, Plaintiff and a vocational expert ("VE") testified (Tr. 33-78). The Court has carefully reviewed the transcript of the testimony at the hearing; however, only the portions of the hearing relevant to the parties' arguments will be addressed within the respective sections of the Court's analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, No. 12-4316, 2013 WL 5749156, at *9 (6th Cir. Oct. 24, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

The ALJ found Plaintiff meets the insured status requirements through December 31, 2016 (Tr. 14). At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 18, 2012, the alleged onset date (Tr. 14). At step two, the ALJ found Plaintiff had the following severe impairments: multiple sclerosis; degenerative disc disease of the lumbar spine status post lumbar surgery; degenerative disc disease of the cervical spine; obesity; dysthymic disorder; and panic disorder (Tr. 14). The ALJ also determined that Plaintiff had non-severe impairments of blurred vision and headaches (Tr. 15). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-19). The ALJ found Plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b). She can lift and carry twenty pounds occasionally and ten pounds frequently. She can sit for six hours in an eight-hour workday. She can stand and/or walk for six hours each in an eight-hour workday. However, she may only occasionally climb ramps and stairs. She may never climb ladders, ropes, or scaffolds. She may only occasionally balance, stoop, or crouch. She may never kneel or crawl. She is limited to understanding, remembering, and carrying out short, simple, repetitive instructions. She is able to sustain attention/concentration for two-hour periods at a time and for eight hours in the workday on short, simple, repetitive[] instructions. She can use judgment in making work decisions related to short, simple, repetitive instructions. She requires an occupation with only occasional co-worker contact and supervision. She requires an occupation with set routines and procedures, and few changes during the workday. She requires an occupation with only

4

> superficial contact with the public on routine matters. She may not perform any fast-paced production work. She can maintain regular attendance and be punctual within customary tolerances. She can perform activities within a schedule. She must avoid even moderate exposure to extreme heat. She must avoid concentrated exposure to wetness, including wet slippery uneven surfaces. She must avoid concentrated exposure to hazards, such as unprotected heights and dangerous machinery.

(Tr. 20). At step four, the ALJ found Plaintiff had no past relevant work (Tr. 25). However, at step five, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy, including work as a labeler, weigher, and inserter (Tr. 25-26). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act at any relevant time (Tr. 26-27).

## IV. ANALYSIS

Among other arguments, Plaintiff asserts the ALJ failed to properly weigh the opinion of her treating physician, Dr. Sibyl Wray, regarding her limitations. The Commissioner argues the ALJ reasonably gave Dr. Wray's opinion "little weight" because treatment notes indicate Plaintiff as "neurologically stable" as of December 2012.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's

5

Case 1:15-cv-00299-SKL   Document 21   Filed 10/14/16   Page 5 of 14   PageID #: 678

findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.     Treating Source Opinion**

As held by the Sixth Circuit Court of Appeals ("Sixth Circuit"), "multiple sclerosis is a progressive disease for which there is no cure. The disease is subject to periods of remission and exacerbation. Nevertheless, in this circuit, multiple sclerosis is not per se disabling under the

6

social security regulations." *Jones v. Sec'y of Health & Human Servs.*, No. 93-1958, 1994 WL 468033, at *3 (6th Cir. Aug. 29, 1994) (citations omitted); *accord Wilcox v. Sullivan*, 917 F.2d 272, 274 (6th Cir. 1990). The question in this case is whether substantial evidence, excluding evidence focused on periods of remission, *see Wilcox* 917 F.2d at 278, supports the ALJ's conclusion that Plaintiff was not disabled because she retained the capacity to perform a limited range of light work. To answer this question, the Court must consider whether the ALJ properly applied the treating physician rule in this case.

It is undisputed that Dr. Sibyl Wray is a board certified neurologist who treated Plaintiff for multiple sclerosis over the course of more than six years beginning in April 2007 (Tr. 270, 431-33). Both parties cite to sources outside the Administrative Record to some degree to explain that multiple sclerosis is a potentially disabling disease of the brain and spinal cord with no known cure and varying symptoms subject to periods of remission. Both parties agree that Dr. Wray's opinion is subject to the treating source rule.

Dr. Wray completed a medical source statement dated October 3, 2012, in which she essentially opined Plaintiff was disabled due to multiple sclerosis (Tr. 557-60). Among other things, Dr. Wray opined Plaintiff had pain and muscle strength problems, could walk about a block without rest or severe pain, could sit two hours at a time, could stand one hour at a time, and sit and stand/walk for less than two hours during an eight-hour working day (Tr. 558). Dr. Wray opined Plaintiff would need to shift positions at will and would need unscheduled breaks during the day (Tr. 558). It is undisputed this opinion would be disabling if adopted as it does not include any combination of work that would equal an eight-hour work day.

The ALJ found

> Sibyl Wray, M.D., the claimant's treating neurologist, submitted a medical source statement indicating functional limitations that

7

> would result in a finding of disability. (*See* Ex. 18F). Most notably, Dr. Wray determined that the claimant could sit, stand, or walk for a total of less than two hours a day. (Ex. 18F/3). Dr. Wray noted that the claimant would require unscheduled breaks and would be off-task twenty-five percent or more of the workday. Dr. Wray also noted that the claimant could only lift less than ten pounds occasionally. (Ex. 18F/4). Dr. Wray further noted that the claimant must avoid heat and temperature extremes. (Ex. 18F/5). The undersigned gives Dr. Wray's opinions only little weight to the extent they indicate functional limitations less than those outlined in the determined residual functional capacity because, to that extent, they are inconsistent with her own treatment notes showing the claimant to be neurologically stable as of at least December 2012.

(Tr. 25). *See also* (Tr. 21) ("In fact, office visit notes from Sibyl Wray, M.D., the claimant's treating neurologist, show the claimant to be neurologically stable as of December 2012. (Ex. 19F/l-2).").

Dr. Wray's treatment note for December 27, 2012 does not state Plaintiff was neurologically stable. Instead, this note indicates Plaintiff was on week 120 of an experimental drug program for multiple sclerosis. Her gait was normal but mildly positive for Romberg's sign (Tr. 561). Dr. Wray noted Plaintiff was tired, she was not happy she could not work, but she was "keeping busy" (Tr. 561). Dr. Wray's notes are somewhat difficult to read, but she checked boxes indicating intact coordination, intact sensation, and normal reflexes with some complaints of back pain (Tr. 561).

The ALJ's reference to Exhibit 19F/1-2 to support that Plaintiff was "neurologically stable" as of December 2012 is a misstatement. Instead, Exhibit 19F/1-2 includes a June 20, 2013 note by Dr. Wray about an examination of Plaintiff after she fell down some stairs that states "[p]atient has been neurologically stable but has had an injury which interferes [with] her ability to do the exam" (Tr. 562). It appears undisputed that this is the only time Dr. Wray used

8

the phrase "neurologically stable." On physical examination, Dr. Wray also noted there was decreased sensation in Plaintiff's left foot (Tr. 562).

In September 2013, Dr. Wray noted Plaintiff thought she was having a relapse with overwhelming fatigue and visual disturbances lasting three days each time (Tr. 563). The doctor noted depression and fatigue and advised counseling for anxiety and depression (Tr. 563).

The opinion of the agency consultative examining doctor, William Holland, M.D., also contained serious limitations that would result in a finding of disability (Tr. 446-47). Dr. Holland's opinions were given "very little weight" by the ALJ "because they are inconsistent with the essentially normal functioning reflected [in] the examination notes outlined above, the residual functioning demonstrated in the claimant's reported daily activities, the lack of any objective evidence showing a need for pain management with more than conservative measures during the period of adjudication, and evidence showing the claimant to be neurologically stable during the period of adjudication." (Tr. 25).

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the

treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) (now (c)(2)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5). "[A] decision denying benefits 'must contain *specific reasons* for the weight given to the treating [physician's] medical opinion.'" *Sharp v. Barnhart*, 152 F. App'x 503, 507 (6th Cir. 2005) (emphasis and second alteration in original) (quoting *Wilson*, 378 F.3d at 544).

In *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011), the Sixth Circuit held: "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned.'" *Id.* at 939 (alteration in original) (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)). In the same vein, the Sixth Circuit has also taken issue with an ALJ merely stating that the treating physician's opinion "conflicted with other evidence," noting the allegedly conflicting evidence must be specified and "must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Gayheart v. Comm'r of Soc. Sec.*,

10

710 F.3d 365, 377 (6th Cir. 2013). The Sixth Circuit held "[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379. Although "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians . . . the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight." *Id.* at 379-80 (citations omitted).

Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Wilson*, 378 F.3d at 544, 547. In *Cole*, the Sixth Circuit recognized that a violation of the "good reasons" rule could only be harmless error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(c)(2). *Cole*, 661 F.3d at 940 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure either to specify the weight afforded to a treating physician or to outline sufficiently specific good reasons can be grounds for remand. *Gayheart*, 710 F.3d at 380; *Cole*, 661 F.3d at 939-40.

The ALJ failed to explicitly state that he was not assigning Dr. Wray's opinion controlling weight, but it is obvious he is not. "A finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) (internal quotation marks

11

omitted). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole*, 661 F.3d at 938.

The ALJ discussed Dr. Wray's treatment and opinion, but gave only a meager and at least partially inaccurate reason for discounting that opinion. The ALJ said he gave Dr. Wray's opinions only little weight to the extent they indicate functional limitations less than those outlined in the ALJ's RFC "because, to that extent, they are inconsistent with her own treatment notes showing the claimant to be neurologically stable as of at least December 2012" (Tr. 25). The ALJ's decision indicates he found the *extent* of the limitations indicated by Dr. Wray's medical opinion was not well supported by her treatment records. The Commissioner argues that while the note referenced by the ALJ does not specifically state that Plaintiff was neurologically stable, the note stands for that premise that Plaintiff was neurologically stable because neurological abnormalities were not noted on the form. Addressing the later report from 2013, the Commissioner argues Dr. Wray made no connection between Plaintiff's multiple sclerosis and her fall. These rationalizations fall far short of meeting the treating physician rule. The ALJ is required to provide a clear rationale for giving less than controlling weight to the treating physician's opinion. The ALJ did not explain how he interpreted this finding to support his conclusion that Dr. Wray's opinion was inconsistent with her treatment notes. As argued by Plaintiff, "neurologically stable" does not necessarily equate to the absence of neurologic defects previously diagnosed. The ALJ did not meet the goal of § 404.1527(c)(2) by providing a single and inaccurate citation as his sole reason for giving Dr. Wray's opinion little weight.

In the face of extensive records based on some six years of treatment and Dr. Wray's specific diagnoses and opinions, the ALJ's generalized comment that her opinions were entitled

12

to only little weight with no elaboration or detail about what he considered the once-cited comment "neurologically stable" to mean in light of years of records, does not satisfy the procedural requirements for rejecting a treating physician's opinion set forth in § 404.1527(c)(2). *See Wilson,* 378 F.3d at 546. As held in *Wilson*: "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [he] is not." *Wilson,* 378 F.3d at 544.

In spite of this flaw, "all essential factual issues" have not been resolved here and the current record does not "adequately establish[]" Plaintiff's entitlement to disability benefits. *Sharp*, 152 F. App'x at 510-11 (quoting *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994)). Under these circumstances, the matter is remanded for further fact finding by the ALJ and for an opportunity to introduce additional evidence regarding the impact of Plaintiff's multiple sclerosis on her ability to work.

Plaintiff also raised other issues, including that the ALJ erred when he found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of Listing 11.09, the listing for multiple sclerosis. As this issue may be impacted by a proper consideration and explanation of the weight given to Dr. Wray's opinion and additional evidence regarding the impact of Plaintiff's multiple sclerosis on her ability to work, the Court will not address it further at this time.

V. **CONCLUSION**

Upon careful review of the administrative record and the parties' arguments and for the foregoing reasons,

1) Plaintiff's motion for summary judgment [Doc. 16] is **GRANTED IN PART** and **DENIED IN PART**.

2) The Commissioner's motion for summary judgment [Doc. 18] is **DENIED.**

3) The Commissioner's decision denying benefits is **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Memorandum and Order.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE